UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| HOLLY YEARY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 07 CV 6325 |
| v. ) | Honorable Elaine E. Bucklo |
| ) | |
| INNERWORKINGS, INC., ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM IN SUPPORT OF**
**DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**

Defendant, INNERWORKINGS, INC., by their attorneys, LEFKOFSKY & GOROSH, P.C., submits the following Memorandum in support of its Motion pursuant to Fed.R.Civ.P. 12(c) for Judgment on the Pleadings.

**INTRODUCTION**

Plaintiff, Holly Yeary (Yeary) is a former employee of Defendant InnerWorkings, Inc. (InnerWorkings). InnerWorkings terminated Yeary's at-will employment on or about April 4, 2007. At that time, the Parties executed a *Separation Agreement* (the Agreement), previously attached to Defendant's Affirmative Defenses as Exhibit A. (For the Court's convenience, the Agreement is attached hereto as Exhibit A.)

Under the express terms of the Agreement and in consideration for certain promises made by InnerWorkings, Yeary expressly agreed to waive (among other things) any and all claims arising out of the termination of her employment with InnerWorkings. Notwithstanding this express contractual provision, Yeary subsequently filed the instant action for purported violation of the Americans with Disabilities Act, 42 U.S.C. ¶ 1201(2), in which she alleges that her

employment with InnerWorkings was terminated because she was disabled and/or because she was perceived as being disabled. Complaint at ¶¶ 9, 11. Defendant has filed the instant Motion for Judgment on the Pleadings in which it contends that the Agreement is a valid and enforceable contract and that the express waiver provision contained in the Agreement bars Plaintiff from initiating or prosecuting this action.

## ARGUMENT

### A.     Standard of Review Under Rule 12(c)

A motion for judgment on the pleadings under Rule 12(c) is proper when the material facts are undisputed and judgment on the merits is possible merely by considering the contents of the pleadings. *Sellers v. M.C. Floor Crafters, Inc.* 843 F.2d 639 (2nd Cir. 1988). A Rule 12(c) motion is reviewed under the same standard as a motion to dismiss under Rule 12(b). See *Frey v. Bank One*, 91 F.3d 45, 46 (7th Cir. 1996). As is the case with Rule 12(b) motions, courts grant a Rule 12(c) motion only if "it appears beyond doubt that the plaintiff cannot prove any facts that would support his claim for relief." *Craigs, Inc. v. General Elec. Capital Corp.*, 12 F.3d 686, 688 (7th Cir. 1993) (quoting *Thomason v. Nachtrieb*, 888 F.2d 1202, 1204 (7th Cir. 1989)). Consequently, in order to prevail, the moving party must demonstrate that there are no material issues of fact to be resolved and the facts in the complaint will be viewed in the light most favorable to the nonmoving party," *GATX Leasing Corp. v. National Union Fire Ins. Co.*, 64 F.3d 1112, 1114 (7th Cir. 1995).

For purposes of a Rule 12(c) motion, the pleadings include the complaint, the answer, and any written instruments attached as exhibits. See, e.g., *Warzon v. Drew*, 60 F.3d 1234, 1237 (7th Cir. 1995) (stating that exhibits attached to the complaint are incorporated into the pleading for purposes of Rule 12(c) motions).

### B. The Agreement is a Valid General Release Under Illinois Law.

Illinois Courts have routinely held that "a general release is valid as to all claims of which a signing party has actual knowledge or that he could have discovered upon reasonable inquiry." *Goodman v. Epstein*, 582 F.2d 388, 404 (7th Cir. 1978); *Oberweis Dairy, Inc. v. Associated Milk Producers, Inc.*, 568 F. Supp. 1096, 1101 (N.D. Ill. 1983). This well-established common law rule warrants dismissal of Plaintiff's claim in this matter.

It is evident from the plain language of the Agreement that it operated as a general release which precludes Yeary from filing any claims arising out of her employment with InnerWorkings. Part II, paragraph 5 of the Agreement specifically states:

> You [Yeary] agree to waive **any** right you may have to file **any** claims(not including unemployment compensation claims) charges or suits against the Company with **any** local, state or federal agency, court or entity arising out of your employment, your employment compensation, and/or your termination from employment. (emphasis added)

In *Szpila v Amana Refrigeration, Inc.*, 1998 WL 214710 (N.D. Ill.), the Court considered the general release language that provided: "I hereby specifically waive . . . and forever discharge [the defendants] from all manner of claims . . . and causes of action, known or unknown . . . , which I may have . . . as a result of my employment and termination thereof . . . ." The Court in *Szpila*, concluded that this release precluded the former employee from suing the defendants for retaliatory discharge. *Id.* The Agreement signed by Yeary is equivalent to the language considered in *Szpila*. In the Agreement, the Plaintiff waived her right to assert "any claim . . . arising out of [her] employment . . . and/or [her] termination from employment. Further, the Agreement specifically precluded Yeary from filing claims in federal court. Accordingly, pursuant to the Plaintiff's general release of claims, as set forth plainly in the Agreement, Yeary should be barred from bringing the present suit.

Moreover, the Plaintiff had actual knowledge, or, upon reasonable inquiry, could have discovered her right to assert an ADA claim against her employer. Whether she considered the possibility of asserting an ADA claim against InnerWorkings at the time of her signing the Agreement is not dispositive. "A general release of claims is not, however, limited to claims that the releasing party happened to be thinking about at the time. Rather, it covers 'all claims of which a signing party has actual knowledge or that he could have discovered upon reasonable inquiry.'" *Howington v. Ghourdjian*, 2002 WL 1793648 (N.D. Ill.) citing *Fair v. International Flabors & Fragrances, Inc.*, 905 F.2d 1114, 1116 (7th Cir. 1999).

In *Hardy v. Chicago Housing Auth.*, 189 Fed. Appx. 510, 511; 513 2006 WL 1868522 (C.A. 7(Ill.)), the Court held that, where the plaintiff signed a general release of claims that released "all claims," he could not later bring a claim under the WARN Act. The Court agreed that "the fact that the agreement did not mention the WARN Act by name is not a barrier to enforcement." *Id.* at 512. Likewise, here, the fact that the Agreement did not mention the ADA by name does not negate its enforceability. As long as the Plaintiff **did know** or, after reasonable inquiry, **could have known** about her right to assert an ADA claim, the Agreement effectively bars her present claim against InnerWorkings.

C. **Yeary's Waiver was Voluntary and Knowing.**

In *Alexander v. Gardner*, 415 U.S. 36 (1974), the Supreme Court held that an employee could not forfeit substantive rights under title VII absent a voluntary and knowing waiver. Later, the Seventh Circuit applied the voluntary and knowing standard set out in *Alexander* to an employee's release of age and race discrimination claims against an employer. *Pierce v. Atchison Topeka & Santa Fe Ry. Co.*, 65 F.3d 562, 571 (7th Cir. 1995). While the Seventh Circuit has not specifically stated that this standard should be applied to a waiver of an ADA

4

claim, it has said that before an employee cedes a substantive right grounded in federal statutory law, she must understand and freely make the decision to do so." *Gibson v. Neighborhood Health Clinics, Inc.*, No. 96-2652 (7th Cir. 8/21/1997). Even, however, if the voluntary and knowing standard does apply to an ADA claim, (See *Rivera-Flores v. Bristol-Meyers Squibb Caribbean*, 112 F.3d 9, 10 (1st Cir. 1997) and See *Hucko-Haas v. Board of Trustees of Illinois Community College District No. 508 d/b/a City Colleges of Chicago*, No. 07 C 0495 (N.D.Ill.2/22/08), Yeary's action should nonetheless be barred because the plain language of the Agreement evinces that she knew and understood her decision and made it freely.

Part II, paragraph 8 of the Agreement specifically provides that:

> You [Yeary] represent and warrant that (1) you have read the foregoing Separation Agreement and you understand its terms; and (2) you voluntarily accept this Agreement in its entirely.

The language could not be more unequivocal.

## CONCLUSION

Certainty is an implicit objective of contract law in general and waivers and releases in particular. Similarly it is axiomatic that it is beneficial on many levels for parties to reach agreements that will obfuscate the need for litigation and judicial intervention. The legitimate objectives of certainty and judicial economy cannot be well served if this Plaintiff is permitted to pursue this litigation, thus allowing her to retreat from her decision to enter into the clear and unequivocal Agreement which was clearly intended to preclude the instant action.

**WHEREFORE**, for all the foregoing reasons, Defendant, InnerWorkings, respectfully prays that this Honorable Court grant its Motion for Judgment on the Pleadings pursuant to Fed.R.Civ.P. 12 (c) and for any other relief which this Court deems just and proper.

Respectfully submitted,


By: /s/Steven R. Lefkofsky
    Steven R. Lefkofsky

LEFKOFSKY & GOROSH, P.C.
31500 Northwestern Highway, Suite 105
Farmington Hills, MI 48334
shefkofshy@lgpclaw.com
248-855-5508

Jay S. Berlin,
Jaffe & Berlin, L.L.C.
Local Counsel
111 W. Washington Street, Suite 1401
Chicago, IL 60602
312-372-1550

6



DATE: April 4, 2007

Re: Separation Agreement

Dear Holly:

This Letter Agreement ("Agreement") sets forth all the understanding and provisions concerning your termination of employment with InnerWorkings, LLC ("Company"), together with its subsidiaries effective 4/4/2007.

## PART I

**Compensation**
The Company will provide you with two weeks of severance pay with a final pay check on April 29, 2007.

**Health Coverage**
Current Law (COBRA) allows employees to continue group Healthcare (Medical, Dental and Vision) coverage up to eighteen (18) months following their date of termination. You will soon receive a COBRA notice, outlining your rights, as well as cost information. Your Healthcare coverage will be considered to have terminated on 4/30/2007 for purposes of COBRA continuation coverage.

**Other Benefits Coverage**
If you are currently participating in any other Benefit Plans, your coverage will terminate effective your termination date or your last day worked, if earlier.

## Part II

1. For purposes of COBRA continuation, your COBRA eligibility date will be 5/1/2007.

2. The Company agrees that it will not contest your unemployment compensation eligibility, and will, upon request, provide information to the appropriate state agency that you were separated for reasons other than cause.

3. You agree that you have, on your last day of employment delivered to the Company all keys, passwords, management materials including all correspondence, manuals, letters, notes, notebooks, computers, data, reports, programs, plans, proposals, and all other Company property, excluding such property specifically excepted by this Agreement.

4. You agree that you will not at any time disparage or defame the Company or any of its officers, directors, employees, or other agents. In addition you will not yourself nor aid others in directly competing with or damaging business, clients, or suppliers of InnerWorkings.

5. You agree to waive any right you may have to file any claims (not including unemployment compensation claims), charges, or suits against the Company with any local, state or federal agency, court or entity arising out of your employment, your employment compensation, and/or your termination from employment.

---

600 W. Chicago • Suite 850 • Chicago, IL 60610 • Phone: 312.642.3700 • Fax: 773.326.0807
www.iwPrint.com


EXHIBIT A

6. You agree that the terms and provisions of this Agreement are to remain confidential and that any disclosure of them to any person, other than your attorney, your accountant, and/or federal and state taxing authorities, will result in the forfeiture of monies paid under this Agreement. You further agree that the payments provided under this Agreement are, in part, made in consideration for your commitment to strict confidentiality. A breach of this paragraph is a material breach of this Agreement and you agree that if you reveal information which you have agreed to keep confidential in this Agreement to any individual other than those identified in this paragraph, you will be deemed in breach of this Agreement. Nothing in this Agreement affects in any way the Company's right to bring any action to enforce this confidentiality provision, seeking all available remedies.

7. It is understood that this Agreement and the terms of your severance not be considered as an admission on the part of the Company of any liability, effort, or omission with respect to you, your employment or the termination of your employment.

8. You represent and warrant that (1) you have read the foregoing Separation Agreement and you understand its terms; and (2) you voluntarily accept this Agreement in its entirety.

9. This Agreement embodies the entire agreement and understanding between you and the Company with respect to the subject matter contained herein. There are no restrictions, promises, representations, warranties, covenants, or undertakings, other than those expressly set forth or referred to herein. This Agreement shall supersede all other agreements and undertakings, both written and oral, between you and the Company with respect to your employment.

10. No amendment, modification or waiver of this Agreement shall be binding or effective for any purpose unless it is made in writing signed by you and an official of the Company.

11. Whenever possible, each provision and term of this Agreement shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision or term of this Agreement shall be held to be prohibited by or invalid under such applicable law, then such provision or term shall be ineffective only to the extent of such prohibition or invalidity, without invalidating or affecting in any manner whatsoever the remainder of such provision or term of the remaining provisions or terms of this Agreement.

12. The language used in this Agreement will be deemed to be the language chosen by you and the Company to express mutual intent, and no rule of strict construction will be applied against any person.

If you have any questions with regard to any portions of the Agreement, please contact me. The items set forth in Part II of this Agreement will only be made available to you if you sign and return one copy of the Agreement agreeing to all of the above.

For InnerWorkings, Inc.

By: _____

Its: _____

I, freely, knowingly, and voluntarily agree and accept this

4 day of April, 2007.

_____
EMPLOYEE'S SIGNATURE